## LUTHER *v.* STATE OF INDIANA.

### [No. 22,135. Filed May 28, 1912.]

1. CRIMINAL LAW. — *Appeal.* — *Review.*—*Verdict.*—*Weight of Evidence.*—Conflicting evidence will not be weighed on appeal to determine whether the verdict of the jury, or finding of the court, is sustained by a preponderance thereof, but there must be some evidence to prove every essential element of the offense charged, otherwise the verdict or finding will not be sustained by the evidence and will be treated as contrary to law. p. 622.

2. MUNICIPAL CORPORATIONS.—*Streets.*—*Use for Travel.*—*Automobiles and Bicycles.*—Drivers of automobiles and bicycles have equal rights upon the streets and equal rights in the use thereof with drivers of other vehicles, and each owes the duty of exercising due care not to injure others lawfully using the public streets and highways. p. 623.

3. MUNICIPAL CORPORATIONS.—*Streets.*—*Use for Travel.*—*Automobiles and Bicycles.*—*Duty of Drivers.*—*Degree of Care.*—While drivers of automobiles and bicycles are each required to exercise ordinary care to avoid injury to others upon the streets, the full discharge of the duty requires more from the former than it does from those using bicycles. p. 623.

4. ASSAULT AND BATTERY.—*Elements.*—*Definition.*—Assault is an inchoate violence to the person of another, with the present means of carrying the intent into effect; while battery is the carrying out of the intent by the actual infliction of the injury. p. 624.

5. ASSAULT AND BATTERY.—*Acts Constituting.*—*Intent.*—*Automobile Collisions.*—An assault and battery may be committed on one riding on a bicycle by another driving an automobile, by the unlawful touching in collision, for the force need not be direct, but intent on the part of the person charged is an essential element of the offense and must be shown to make the touching criminally unlawful. pp. 624, 625.

Luther *v.* State—177 Ind. 619.

6. HOMICIDE.—*Manslaughter.*—*Automobile Collisions.*—A driver of an automobile causing a collision which results in death may be convicted of manslaughter, if the collision was caused directly by such gross carelessness as to imply an indifference to consequences, or by the commission of an unlawful act. p. 624.

7. ASSAULT AND BATTERY.—*Intent.*—*Inference.*—*Automobile Collisions.*—Intent by an automobile driver to injure another by causing a collision may not be implied from a lack of ordinary care, but may be inferred from intentional acts, where the injury was the direct result of them, done under circumstances showing a reckless disregard for the safety of others, and the willingness to inflict the injury, or the commission of an unlawful act which leads directly and naturally to the injury. p. 625.

8. ASSAULT AND BATTERY.—*Negligence.*—*Wilful Injury.*—*Responsibility.*—There may be a civil liability for damages for both ordinary negligence and wilful injury, but there can be criminal responsibility for the latter only. p. 626.

9. ASSAULT AND BATTERY.—*Automobile Collisions.*—*Intent.*—*Evidence.*—*Sufficiency.*—Where, in a prosecution for assault and battery against a driver of an automobile who collided with the rider of a bicycle, it was shown that both were proceeding along a street in the same direction with but little difference in the speed at which they were traveling, that on approaching a street-car that had stopped to let off passengers, they both proceeded in the usual way to pass to the left of the car, that defendant proceeded to pass to the left of the bicycle rider, leaving a margin of five feet between the automobile and the street-car for the bicyclist's use, that in this position they proceeded in parallel lines, from which defendant did not deviate up to the instant of collision, that on seeing an approaching street-car the bicyclist turned his bicycle to the left when he was struck by the defendant's automobile, the evidence was insufficient to warrant the inference that the defendant intended to inflict the injury. p. 627.

10. ASSAULT AND BATTERY.—*Automobile Collision.*—*Violating Speed Law.*—The mere fact that at the time of a collision the driver of an automobile was violating the provisions of the speed law (§10464 Burns 1908, Acts 1905 p. 202) does not render him guilty of assault and battery, where the evidence shows that the injury was not caused by reason of the excessive speed. p. 628.

From Criminal Court of Marion County, (40,165) ; *Joseph T. Markey,* Judge.

Prosecution by the State of Indiana against Leonard W. Luther. From a judgment of conviction, the defendant appeals. *Reversed.*

*John B. Elam, James W. Fesler* and *Harvey J. Elam,* for appellant.

*Thomas M. Honan,* Attorney-General, *Thomas H. Branaman, Edwin Corr* and *James E. McCullough,* for the State.

Cox, C. J.—Appellant was charged by affidavit in the lower court with the offense of assault and battery on George Wiesehan, was tried by the court without the intervention of a jury, and convicted. The basis of the charge was a collision between an automobile driven by appellant and a bicycle on which Wiesehan was riding, which caused injury to the latter.

Appellant filed a motion for a new trial for the statutory grounds that the finding of the court was contrary to law and that it was not sustained by sufficient evidence. The court overruled the motion, and that ruling is made the foundation for the assignment of error in this court.

The evidence without contradiction shows that between 8 and 9 o'clock in the morning of a day in July, 1911, a street-car was proceeding south on Meridian street in the city of Indianapolis, a little less than a mile from Washington street, and in what was principally a residence district. There were double tracks in the street; the south-bound cars using the west tracks, and the north-bound cars those on the east side. Wiesehan was riding a bicycle southward in the street, following the car, and appellant was driving an automobile in the same course, following him. The car stopped to discharge passengers, and this and vehicles between the car and the street curb prevented both Wiesehan and appellant from passing to the right of the car. Wiesehan turned to the left, to pass the standing car, onto the space between the tracks, and appellant, then ten or fifteen feet behind him, turned farther to the left and proceeded along the east track with the same purpose. They proceeded in parallel lines, with a space about five feet wide between the automobile and the car, along which space Wiesehan was riding. Appellant was going then at a slightly greater speed than the bicycle

rider, and while near the middle of the standing street-car was just passing him to the left when the bicycle came in contact with the right fender or mud guard of the automobile, about midway between the front and the rear of that vehicle, and Wiesehan was thrown to the pavement and severely hurt. Appellant had sounded his horn about fifty feet back of the standing car, but Wiesehan did not hear it. He was driving the machine at twelve miles an hour, as shown by his speedometer, just before the accident, and at a slightly slower speed at the time; he had it under control and could have stopped it readily. At that time a street-car was approaching from the south on the east track, about half a block away. Wiesehan testified that he saw this car approaching, and had it in mind to turn to the left, but did not know whether he did, for the fall rendered him unconscious. He testified that he did not know that the automobile was coming up from the rear.

The motorman of the north-bound street-car, although some distance away, testified that the automobile and bicycle were coming straight down the street about parallel until near the center of the standing street-car, when it seemed to him that about the middle of the fender on the right side of the automobile struck the hind wheel of the bicycle.

Appellant testified that just as that part of the automobile in which he was sitting and driving passed Wiesehan, the latter, without looking up at him, turned to the left, and the rear fender struck the front of the bicycle, either the wheel or handle bars.

Only these three gave testimony in the case concerning the collision, and the facts, circumstances and conditions immediately preceding it.

Because this court has been constituted a tribunal for the correction of errors of law only, it has long and uniformly refused to weigh conflicting evidence and to determine
1. whether it sustained the verdict of the jury or finding of the court by a preponderance. But the rule has

prevailed with equal uniformity, that the record must contain some evidence to prove every essential element of the offense charged in the indictment or information, otherwise the verdict or finding of guilty will not be sustained by the evidence, and will be treated as contrary to law. *Stout* v. *State* (1881), 78 Ind. 492; *White* v. *State* (1894), 136 Ind. 308, 36 N. E. 274; *Deal* v. *State* (1895), 140 Ind. 354, 39 N. E. 930; *Chapman* v. *State* (1901), 157 Ind. 300, 303, 61 N. E. 670.

Automobiles and bicycles have equal rights on the streets, and equal rights in the use thereof with other vehicles. The drivers of automobiles and the drivers of other vehicles, 2. including bicycles, owe a duty to others lawfully using the public streets and highways, and are required to exercise due care in the use of their vehicles not to injure others. Babbitt, Motor Vehicles, §35 *et seq.* and cases cited; Davids, Motor Vehicles §169; Huddy, Automobiles (3d ed.) §46; *House* v. *Cramer* (1907), 134 Iowa 374, 112 N. W. 3, 10 L. R. A. (N. S.) 655, 13 Ann. Cas. 461; *Weber* v. *Swallow* (1908), 136 Wis. 46, 116 N. W. 844; *Rogers* v. *Phillips* (1910), 206 Mass. 308, 92 N. E. 327, 28 L. R. A. (N. S.) 944; *Simeone* v. *Lindsay* (1907), 6 Penn. (Del.) 224, 65 Atl. 778; *Christy* v. *Elliott* (1905), 216 Ill. 31, 74 N. E. 1035, 1 L. R. A. (N. S.) 215, 108 Am. St. 196, 3 Ann. Cas. 487; *Merklinger* v. *Lambert* (1908), 76 N. J. L. 806, 72 Atl. 119; *Holland* v. *Bartch* (1889), 120 Ind. 46, 22 N. E. 83, 16 Am. St. 307; *Indiana Springs Co.* v. *Brown* (1905), 165 Ind. 465, 74 N. E. 615, 6 Ann. Cas. 656, 1 L. R. A. (N. S.) 238; *McIntyre* v. *Orner* (1906), 166 Ind. 57, 76 N. E. 750, 4 L. R. A. (N. S.) 1130, 117 Am. St. 359, 8 Ann. Cas. 1087; *Brinkman* v. *Pacholke* (1908), 41 Ind. App. 662, 84 N. E. 762.

While the duty of using reasonable and ordinary care falls alike on the driver of an automobile and the rider or 3. driver of a bicycle, for reasons growing out of inherent differences in the two vehicles, it is obvious that

more is required from the former, to fully discharge the duty, than from the latter. The great weight of the automobile, the high speed at which it may be driven, and the ease with which the great power of its motor engine may be applied, distinguish it, in the matter of danger to others, from the light foot-power bicycle, and much is therefore required of the driver of it to discharge the duty of due care.

Section 2242 Burns 1908, Acts 1905 p. 584, §354, provides that "whoever, in a rude, insolent or angry manner, unlawfully touches another, is guilty of assault and battery." Assault is defined to be an inchoate violence to the person of another, with the present means of carrying the intent into effect; while battery is the carrying out of the intent by the actual infliction of the injury.

That an assault and battery may be committed upon one riding on a bicycle by another driving an automobile, by the unlawful touching, in collision, is clear, for the force need not be direct. Thus striking a horse, whereby the rider is thrown, may be assault and battery. And so may be taking hold of the clothes of another to detain him, or striking the skirt of his coat, or a cane which he holds in his hand. The same is true of striking the horses attached to the vehicle of another in which he is riding. Clark & Marshall, Crimes (2d ed.) §199 and cases cited; Ewbank, Crim. Law §756; Gillett, Crim. Law §226; Wharton, Crim. Law (10th ed.) §617; 1 Russell, Crimes (9th Am. ed.) 1021; 5 Am. and Eng. Ency. Law and Pr. 688, 696; 2 Greenleaf, Evidence (16th ed.) §§82, 84; *Kirland* v. *State* (1873), 43 Ind. 146, 13 Am. Rep. 386.

And if the injury occasioned by the collision results in death, the culpable driver may be justly convicted of manslaughter, if the collision was caused directly by such gross carelessness as to imply an indifference to consequences, or by the commission of an unlawful act. Huddy, Automobiles (3d ed.) §214 *et seq.; State* v. *Campbell* (1909), 82 Conn. 671, 74 Atl. 927, 135 Am. St. 293, 18 Ann.

Luther *v.* State—177 Ind. 619.

Cas. 236; *State* v. *Goetz* (1910), 83 Conn. 437, 67 Atl. 1000, 30 L. R. A. (N. S.) 458; *State* v. *Watson* (1909), 216 Mo. 420, 115 S. W. 1011; *Bilk* v. *People* (1888), 125 Ill. 584, 17 N. E. 744; *People* v. *Scanlon* (1909), 132 App. Div. 528, 117 N. Y. Supp. 57; *People* v. *Darragh* (1910), 141 App. Div. 408, 126 N. Y. Supp. 522; *Schultz* v. *State* (1911), 89 Neb. 34, 130 N. W. 972, 33 L. R. A. (N. S.) 403; *State* v. *Stentz* (1903), 33 Wash. 444, 74 Pac. 588. See note to *Johnson* v. *State* (1902), 61 L. R. A. 277, where the authorities on criminal negligence are fully collected.

The evidence in this case establishes the collision, and the hurt of Wiesehan by the force of it, and is therefore a rude touching of another. Intent on the part of the person charged, to apply the force constituting the battery, is, however, an essential element of the offense and must be shown to make the touching criminally unlawful. 2 Greenleaf, Evidence (16th ed.) §83; 5 Am. and Eng. Ency. Law and Pr. 680; Underhill, Crim. Ev. (2d ed.) §354; *Vanvactor* v. *State* (1888), 113 Ind. 276, 280, 15 N. E. 341, 3 Am. St. 645; *Perkins* v. *Stein & Co.* (1893), 94 Ky. 433, 22 S. W. 649, 20 L. R. A. 861.

But the intent may be inferred from circumstances which legitimately permit it. Intent to injure may not be implied from a lack of ordinary care. It may be from intentional acts, where the injury was the direct result of them, done under circumstances showing a reckless disregard for the safety of others, and a willingness to inflict the injury, or the commission of an unlawful act which leads directly and naturally to the injury. Underhill, Crim. Ev., *supra;* note to *Johnson* v. *State, supra; Banks* v. *Braman* (1905), 188 Mass. 367, 74 N. E. 594; *State* v. *Campbell, supra; Mercer* v. *Corbin* (1889), 117 Ind. 450, 20 N. E. 132, 3 L. R. A. 221, 10 Am. St. 76; *Reynolds* v. *Pierson* (1902), 29 Ind. App. 273, 64 N. E. 484; *Palmer* v. *Chicago, etc., R. Co.* (1887), 112 Ind. 250, 14 N. E. 70; *Parker* v. *Pennsyl-*

*vania Co.* (1893), 134 Ind. 673, 34 N. E. 504, 23 L. R. A. 552; *Fisher* v. *Louisville, etc., R. Co.* (1897), 146 Ind. 558, 45 N. E. 689.

There may be a civil liability for damages for both ordinary negligence and wilful injury. But there can be criminal responsibility for the latter only. In *Banks* v.

8. *Braman, supra,* it was said: ''In one case there need be nothing more than a lack of ordinary care, which causes an injury to another. In the other case there is wilful, intentional conduct whose tendency to injure is known, or ought to be known, accompanied by a wanton and reckless disregard of the probable harmful consequences from which others are likely to suffer, so that the whole conduct together, is of the nature of a wilful, intentional wrong. The subject was discussed at length in *Aiken* v. *Holyoke St. Railway* [1903], 184 Mass. 269, 271, and a part of the language used in the opinion is as follows: 'It is equally true that one who wilfully and wantonly, in reckless disregard of the rights of others, by a positive act or careless omission exposes another to death or grave bodily injury, is liable for the consequences, even if the other was guilty of negligence or other fault in connection with the causes which led to the injury. The difference in rules applicable to the two classes of cases results from the difference in the nature of the conduct of the wrongdoers in the two kinds of cases. In the first case the wrongdoer is guilty of nothing worse than carelessness. In the last he is guilty of a wilful, intentional wrong. His conduct is criminal or *quasi* criminal. If it results in the death of the injured person, he is guilty of manslaughter. *Commonwealth* v. *Pierce* [1884], 138 Mass. 165 [52 Am. Rep. 264]; *Commonwealth* v. *Hartwell* [1880], 128 Mass. 415 [35 Am. Rep. 391]. The law is regardful of human life and personal safety, and if one is grossly and wantonly reckless in exposing others to danger, it holds him to have intended the natural consequences of his act, and treats him as guilty of a wilful and intentional wrong. It is no defense to a

charge of manslaughter for the defendant to show that, while grossly reckless, he did not actually intend to cause the death of his victim.' In these cases of personal injury there is a constructive intention as to the consequences, which, entering into the wilful, intentional act, the law imputes to the offender, and in this way a charge which otherwise would be mere negligence, becomes, by reason of a reckless disregard of probable consequences, a wilful wrong. That this constructive intention to do an injury in such cases will be imputed in the absence of an actual intent to harm a particular person, is recognized as an elementary principle in criminal law. It is also recognized in civil actions for recklessly and wantonly injuring others by carelessness.' ''

We think it must be clear that the uncontradicted evidence in this case does not establish facts which permit the implication that appellant intended to inflict injury upon 9. Wiesehan. There was little difference in the speed at which they were respectively traveling. They had equal rights to the use of the street. They might both, in the exercise of their rights, pass the standing street-car, or either might pass the other. They both proceeded to pass the car in the usual way, to the left of it, and appellant proceeded to pass to the left of the bicycle rider on that part of the street which was unoccupied, leaving a margin of safety—five feet—between his vehicle and the street-car for Wiesehan's use. In this position they proceeded in parallel lines, from which appellant did not deviate up to the instant of the collision. The statement of the motorman of the north-bound street-car, that it seemed to him that the automobile struck the rear wheel of the bicycle, is without force, in view of his statement that the two vehicles were traveling in parallel lines up to the moment of the contact of the two. As he agrees with appellant, that the contact between them took place on the side of the automobile, midway between its front and rear, it would seem to have been physically impossible for the latter to have struck the rear wheel of the

bicycle. It is, too, contrary to the testimony of appellant, both alone and in connection with that of Wiesehan, for the latter testified that he went straight ahead between the two car tracks until he saw the car approaching from the south, when he formed the intent to turn to the left side of the street, manifestly to avoid it, but did not know whether he did, for he was then struck. The turning of his bicycle to the left threw it into contact with the automobile. Without this act on his part, appellant would have passed him without interfering with his progress. The facts do not show conduct under circumstances evincing a reckless disregard for the safety of others indicating a willingness to inflict injury, and the inference that appellant intended to injure Wiesehan cannot be drawn.

If appellant had followed closely after Wiesehan, and had run into his bicycle from the rear, or turned upon him and knocked him from his bicycle, the intention to harm might have been properly inferable.

The statute (§10464 Burns 1908, Acts 1905 p. 202) makes it unlawful to operate a motor vehicle on any public highway or in any public place at any rate of speed greater than is reasonable and proper, having regard to the use in common of such highway or place, or so as to endanger the life or limb of any person, and in no event at a greater rate of speed than eight miles an hour in the business and closely built up portions of any municipality of the State, nor more than fifteen miles in any other portion of such municipality. Whether appellant was in violation of this law, we need not determine, for the injury to Wiesehan was not caused by the rate at which he was traveling. The same sort of an accident could happen when passing vehicles are moving more slowly than the prescribed lawful rate. It might be said that if appellant had been traveling more slowly, his automobile would not have been up even with Wiesehan, and he would not, therefore, have turned into it, but would have passed safely over to the left side of the

street; but it may also be said that if he had been moving at a far greater speed, and clearly volating the law, he would have been past the bicycle rider, thus leaving him a clear way. In the case of *Mercer* v. *Corbin*, 117 Ind. 450, where it was held that one who, while riding a bicycle on a sidewalk in violation of law, rode it against a person standing on the walk and injured him, was guilty of assault and battery, the injury would not have happened at all if the rider of the bicycle had not been violating the law. See *Potter* v. *State* (1904), 162 Ind. 213, 70 N. E. 129, 64 L. R. A. 942, 102 Am. St. 198, 1 Ann. Cas. 32; *Commonwealth* v. *Adams* (1873), 114 Mass 323, 19 Am. Rep. 362.

The evidence being insufficient to prove a criminal intent on the part of appellant, the judgment is reversed, with instructions to sustain appellant's motion for a new trial.

NOTE.—Reported in 98 N. E. 640. See, also, under (1) 12 Cyc. 908; (2) 28 Cyc. 26, 907; 28 L. R. A. (N. S.) 944; (3) 28 Cyc. 27; 108 Am. St. 213; 4 L. R. A. (N. S.) 1130; (4) 3 Cyc. 1020, 1021; (5) 3 Cyc. 1024; 14 L. R. A. 226; (6) 21 Cyc. 760, 766; 18 Ann. Cas. 239; 30 L. R. A. (N. S.) 458; 33 L. R. A. (N. S.) 403; (7) 3 Cyc. 1024, 1058; (8) 3 Cyc. 1024; (9) 3 Cyc. 1058; 23 L. R. A. (N. S.) 389; (10) 3 Cyc. 1058. As to the rights and duties of one riding a bicycle on a highway, see 16 Am. St. 314, note to *Holland* v. *Bartch*, 120 Ind. 46 also 48 Am. St. 377.