LAUCHLIN McLEAN, DEFENDANT IN ERROR, v. ERIE
RAILROAD COMPANY, PLAINTIFF IN ERROR.

Argued November 11, 1902—Decided February 24, 1903.

1. Where the evidence, when the plaintiff rests, leaves the con-
tributory negligence of the plaintiff in doubt, the case is for
the jury.
2. In referring to photographs, the judge said to the jury: "I have
admitted these photographs in evidence. They are put before
you. You ought to look at them with a good deal of caution. I
suppose all of you know that a photograph of natural scenery
is more or less misleading as to distance on account of what the
artist would call perspective or want of perspective. Do not
be misled by the photographs in an estimate of distance; in that
respect, it is fair to say that they are unavoidably misleading;
it is the nature of photography." This was not an erroneous
statement but one within the legitimate right of comment by a
trial judge.
3. It is for the jury to say whether the testimony of a witness,
having an equal opportunity to hear and whose hearing is
equally good, and who testifies that he did not hear the blowing
of a whistle or ringing of a bell, notwithstanding he listened,
shall or shall not be given equal credit with the testimony of a
witness, similarly situated, who testifies that he did hear.

On error to the Essex Circuit Court.

Before GUMMERE, CHIEF JUSTICE, and Justices VAN SYCKEL,
FORT and PITNEY.

For the plaintiff in error, *Cortlandt & R. Wayne Parker.*

For the defendant in error, *Samuel Kalisch.*

The opinion of the court was delivered by

FORT, J. This was an action for damages alleged to have
resulted from an injury caused by the train of the defendant
company running into a wagon of the plaintiff, in which the
plaintiff was, at the crossing of the said company, at or near
Soho, in Essex county.

There was a motion to nonsuit and also a motion to direct a verdict for the defendant, both of which motions were refused by the learned trial judge. A careful examination of the testimony leads to the conclusion that there was no error in either of these refusals. There was proof in the case, in corroboration of the testimony of the plaintiff, by two witnesses, one, Eugene Verhagen, called by the plaintiff, and the other, Edward Arlington, called by the defendant, that the plaintiff had stopped his wagon within twenty-five feet of the crossing. Mr. Verhagen testifies that he was on foot passing in the same direction along the highway as the plaintiff; that as he drew near the track, the plaintiff's wagon was standing within about twenty-five feet of the track, and that he passed by him as he stood there and crossed the track for several hundred feet before he heard the sound of what undoubtedly was the accident. Mr. Arlington testifies that he was passing along the highway on a bicycle; that he was going down towards the railroad crossing; that the wagon was just ahead of him, in what he describes as "semi-darkness;" he says he heard the rumble of the train and was intent on finding out whether this wagon would cross before the train got to the crossing or not, and then says: "Just as I thought it was past the crossing, the train flashed on the crossing and the crash came." On cross-examination, he was asked whether the wagon stopped, and said he could not say, and being asked why he could not say, gave as his reason, "On account of the darkness." But his statement, which was quite detailed and accurate, is entirely consistent with the theory of the plaintiff that the wagon had stopped before he came up, or was actually standing at the time he first saw it. If the statement of Mr. Verhagen is to be accepted, it is quite apparent that at the time he crossed the track, when the plaintiff's wagon was at a standstill, the train of the defendant company was not within sight. Both Verhagen and Arlington testify as distinctly and specifically as human testimony can be given to a negative fact upon the question of whether the statutory signals were given. Both of these witnesses affirm that they did not hear the bell ring or the whistle blow, and it seems impossible to believe that

Arlington would not have heard them in view of the fact that he states that he was familiar with the train, knew it was coming, was looking for and expecting it and heard the rumble, but did not hear any bell or whistle, and of the further fact that he was undoubtedly listening for the warning to the plaintiff, who was about to pass over the track in a position which, he thought, was one of danger, and against which, he states, he was endeavoring to get near enough him to warn him.

The question of negligence in the company and contributory negligence in the plaintiff were clearly jury questions, under the evidence in the case, and were rightly left to the jury by the trial judge.

Another assignment of error was as to the court's statement in the matter of photographs which had been introduced in evidence by the defendant. On that subject the court said: "I am asked to mention the subject of the photographs to you. I have admitted these photographs in evidence and they are put before you; you ought to look at them with a good deal of caution. I suppose all of you know that a photograph of natural scenery is more or less misleading as to distance, on account of what the artist would call perspective or want of perspective. You can hardly judge accurately of distance from a mere inspection of the photographs. So far as concerns the trees and shrubbery that were there at the time, you must remember that the photographs were taken on the 14th of January, 1901, about three weeks or a little more than three weeks after this accident." (Then follows a statement by the judge as to the allegations in the proof of the change in trees, underbrush, &c., and then he concludes as follows): "That is a question for you to judge under the testimony in this case, but do not be misled by the photographs in an estimate of distance; in that respect it is fair to say that they are unavoidably misleading; it is the nature of photography." This statement of the court is not only legitimate comment on the evidence, but is a statement of that which is common observation and knowledge. There is much that is misleading in photographs in the matter of distance, in what the

learned trial judge well calls "perspective" or "want of perspective." It depends almost entirely upon the view-point from which a photograph is taken as to the effect that is given to the surroundings at the point shown thereon. We see no reason for reversal in these statements.

Another alleged error was on account of the refusal of the trial judge to charge the following request: "That affirmative evidence of the ringing of the bell and blowing of the whistle is generally entitled to more weight than evidence that it was not noticed or heard." We are unable to see upon what principle a judge is justified in stating to a jury that one piece of evidence, which is legitimate, is not to be treated by the jury the same as other evidence in the cause. It is for the jury to say whether the testimony of a witness having an equal opportunity to hear and whose hearing is equally good, and who testifies that he did not hear the blowing of a whistle or the ringing of a bell, notwithstanding he listened, shall or shall not be given equal credit with the testimony of a witness, similarly situated, who testifies that he did hear.

There was no error in the refusal of the trial judge to charge the request excepted to.

The judgment of the Circuit Court is affirmed.